

BOIES
SCHILLER
FLEXNER

June 14, 2024

**VIA EMAIL**

Honorable Charles Eskridge
United States District Judge
United States District Court for the Southern District of Texas
515 Rusk Street
Houston, TX 77002

   *Re*: **Parker v. Souki, Case No. 4:23-mc-02137**

Dear Judge Eskridge:

  We represent plaintiffs-respondents Christopher Parker and Red Mango Enterprises Ltd. (together, "Plaintiffs") in the above-captioned miscellaneous action, who are the plaintiffs in the underlying action in Colorado and appear here to oppose the motion to quash a third-party subpoena by Tellurian, Inc. and compel Tellurian's compliance with that subpoena. While we are pleased to report that Plaintiffs and Tellurian have made substantial progress in narrowing the issues in dispute—likely to the point where there is nothing for the Court to resolve—this process has unfortunately resulted in a substantial delay of discovery.

  We write now to request that the Court so order what should be accepted by Tellurian as a final resolution of this miscellaneous action, and so order a date certain by when Tellurian must be deposed. All discovery in the underlying action in Colorado must be completed by July 16, 2024 and Plaintiffs believe that without the assistance of this Court, we may not be able to obtain Tellurian's deposition by that date.

  By way of background, on January 17, 2024, the parties appeared before Your Honor regarding Tellurian's motion to quash. At the hearing, the parties to the dispute represented that they were negotiating in good faith toward a resolution. On January 26, 2024, the Court entered an order denying the motion to quash as moot "without prejudice to any of the parties raising a further dispute in a timely fashion by way of discovery letter." Dkt. No. 12. The parties continued to narrow the scope of the dispute concerning the noticed deposition topics, but the parties were at an impasse as to five remaining topics and requested a further conference before the Court to resolve the dispute.

  On February 14, 2024, the parties again appeared before the Court, which ordered that Tellurian produce a witness capable of testifying to one of the disputed topics and further ordered that the parties continue to negotiate in good faith to narrow the other four topics in dispute. Dkt. No. 20. The Court's order further noted that "narrowed and specified topics may be brought to the Court's attention if the parties can't agree on an appropriate basis by which to proceed." *Id.*



The parties appeared before the Court again on April 17, 2024, where the parties "noted having reached substantial agreement on many of the designated topics." Dkt. No. 24. The parties continued to negotiate over the following days and reached agreement on all but one subtopic.

The only open issue was a subtopic seeking testimony related to the 2019 memorandum of understanding (the "MOU") between Tellurian and the Indian energy company, Petronet LNG Limited ("Petronet"). *See* Exhibit A, Topic 11.1. The MOU reflects Petronet's agreement to invest in the Driftwood Project, a major LNG terminal that Tellurian is building near Lake Charles, Louisiana. In order to narrow, or even eliminate the topic entirely, Plaintiffs requested that Tellurian produce the MOU, which is not publicly available. Upon reviewing the MOU, Plaintiffs may determine that they do not need to examine Tellurian on the agreement.

Counsel for Tellurian has never objected to providing the MOU. Indeed, counsel for Tellurian has confirmed that the MOU is in his possession, and has repeatedly promised to produce it. Nonetheless, Tellurian has yet to produce the MOU even after six requests to do so and assurances by Plaintiffs that the MOU would be treated as confidential under the operative protective order in the underlying action in Colorado, as requested by Tellurian. Instead, Tellurian's counsel has continued to make excuses for his delays, claiming not to have received our emails. And even in responding to explain the delay, counsel failed to produce the document he admits is in his possession.

Separately, we have attempted to work with counsel on scheduling the deposition itself. We requested Tellurian propose dates over a broad period toward the end of May. Despite our attempt to be flexible, Tellurian provided only one available date—June 12—which we tried to accommodate, but due to conflicting trial and mediation schedules, we could not take the deposition then. Tellurian has not responded to our request for alternative dates.

Given the foregoing, we respectfully request that the Court: (1) order Tellurian to produce the MOU to Plaintiffs immediately; and (2) order that Tellurian make a witness available by July 5, 2024, who will be capable of testifying to the topics attached as Exhibit A. Exhibit A reflects the agreed-upon topics negotiated with Tellurian, with the exception that Topic 11.1 as written reflects Plaintiffs' version of that topic, given Tellurian's refusal to produce the MOU.

Respectfully submitted,

*/s/ Craig A. Wenner*

Craig A. Wenner

*Counsel to Plaintiffs Christopher Parker and Red Mango Enterprises Ltd.*

# EXHIBIT A

*Parker v. Souki*, Case No. 4:23-mc-02137
**Topics for the Deposition of Tellurian, Inc. Pursuant to F.R.C.P. 30(b)(6)**

## TOPIC 1

Documents relevant to this action, including (1) a description and location of custodial and non-custodial documents; (b) electronic devices used or made available to Charif Souki; (c) steps taken to identify, search, retrieve, and collect documents; (d) policies and procedures for document retention, destruction, or alteration; (e) policies and procedures related to backup or archiving processes for the systems and devices used by the Company and custodians, as well as the ability to restore, search, and produce ESI on backup media or legacy systems; and (f) chain of command for the subject matter of the above subparts

## TOPIC 2

Communications between Plaintiffs and any officer, director, employee or agent of the Company, including Defendant.

## TOPIC 3

The Company's organizational structure including, but not limited to, the chain of command, decisionmakers, respective roles, job duties, and compensation. This topic includes positions held by Charif Souki at the Company, including Executive Chairman, and Mr. Souki's job duties and compensation in each position.

## TOPIC 4

Plaintiffs' and Defendant's ownership of the Company's Securities.

## TOPIC 5

The Company's stock price between January 2017 and present day.

## TOPIC 6

Market research that was disclosed or transmitted by the Company to Plaintiffs or otherwise discussed in communications with Plaintiffs, and market research conducted by or in the possession of Tellurian Concerning the subject matter of any of the Company's Communications with Plaintiffs.  For purposes of this Topic, the term "Company" extends to any of Tellurian, Inc.'s executives, officers, and employees.

## TOPIC 7

Any purported short-selling campaign related to the Company's Securities.

**TOPIC 8**

The compensation awarded to Charif Souki and Tarek Souki, including but not limited to the grant of stock options. This topic includes the decision-making process behind a compensation award, related documents and meetings before or after the fact, and any severance or indemnification agreements between directors and officers and the Company."

**TOPIC 9**

1. The status of the construction of the Driftwood LNG facility and the financing for the Driftwood Project through equity investments or contracts for the delivery of LNG as of August 2019; and

2. The status of the construction of the Driftwood LNG facility and the financing for the Driftwood Project through equity investments or contracts for the delivery of LNG as of April 2021; and

**TOPIC 10**

1. Article 4 of the July 10, 2019 Equity Capital Contribution Agreement and any other terms of that agreement related to the funding or completion of any phase of the Driftwood Project.

2. The terms of any voting agreements entered into in 2019 between Tellurian and Total Delaware, Inc. to which Charif Souki or the Souki 2016 Family Trust were a party."  These are short and simple documents for which a witness can easily prepare to testify.

3. Communications with Total regarding the drop of the share price of Tellurian during August 2019; and

4. The termination of the 2019 Equity Investment and LNG Purchase Agreements in July 2021.

**TOPIC 11**

1. Any terms of the September 2019 memorandum of understanding ("MOU") entered into between Tellurian and Petronet LNG Limited INDIA related to the share price of Tellurian, including but not limited to any terms of the MOU the operation of which is dependent on the performance of Tellurian stock; Tellurian's involvement in organizing the visit of Prime Minister Narendra Modi to Houston, TX in 2019;

2. Communications with Petronet regarding the drop of the share price of Tellurian during August 2019 and the effect of that price drop on the negotiations of the MOU; and

3. The termination of the 2019 MOU.

**TOPIC 12**

1. Defendant's role in introducing Tellurian to any employee or officer of UBS O'Connor LLC for the purpose of entering into Driftwood Loan Agreement

2. Tellurian's awareness of a Loan Side Letter Agreement dated May 23, 2019, entered by and among Charif Souki, the Souki Family 2016 Trust, Strudel Holdings LLC, Ajax, AVR AH LLC, Bermudez Mutari, Ltd., Nineteen 77 Capital Solutions A LP, and Wilmington Trust, National Association; and

3. The relationship between Defendant's appointment as Executive Chairman of Tellurian and the Driftwood Loan Agreement or any related agreement.

**TOPIC 13**

The Alleged Agreements between Plaintiffs and Defendant.

**TOPIC 14**

The Souki Family 2016 Trust and its ownership of the Company's Securities.

**TOPIC 15**

The following portions of Tellurian's Securities & Exchange Commission filings:

1. April 29, 2019 Proxy Statement (DEF 14A) at 12 (references to TOTAL's "right to designate for election one member of Tellurian's Board" and the "2017 TOTAL Voting Agreement"); *id.* at 19-20 (references to the "Tellurian CSPA", the "first 2019 TOTAL Voting Agreement", the "second 2019 TOTAL Voting Agreement", and the "Sharing Issuance Proposal"); *id.* at 50 ("2018 Director Compensation Table" section); *id.* at 53-54 ("Tarek Souki Employment Agreement" section); *id.* at 54 ("Total Transactions" section); *id.* at 54-58 ("Directors and Executive Officers" section, as it relates to any shares beneficially owned by Souki and any agreements related thereto);

2. March 5, 2020 General Statement of Acquisition of Beneficial Ownership, at 2-5;

3. May 14, 2020 Proxy Statement (DEF 14A), at 14 ("Voting Agreements" section); *id.* at 47 ("2019 Director Compensation Table" section); *id.* at 52 ("Share Issuance Voting Agreements" section); *id.* at 59 ("Cheniere Litigation" section); *id.* at 59-60 ("Tarek Souki Employment Agreement" section); *id.* at 60-61 ("Total Transactions" section); *id.* at 62-64 ("Directors and Executive Officers" section, as it relates to any shares beneficially owned by Souki and any agreements related thereto);

4. April 29, 2021 Proxy Statement (DEF 14A), at 25 (statements regarding the "time-vested stock options" granted to Souki and Souki's "cash compensation"); *id.* at 41 ("Executive Chairman Compensation" section); *id.* at 42-43 ("Summary Compensation Table"

section); *id.* at 43-44 ("Grants of Plan-Based Awards" section); *id.* at 44-46 ("Outstanding Equity Awards at December 31, 2020" section); *id.* at 46 ("Option Exercises and Stock Vested" section); *id.* at 47 ("Charif Souki" section); *id.* at 53 ("2020 Director Compensation Table" section); *id.* at 55 ("Cheniere Litigation" section); *id.* at 56 ("Tarek Souki Employment Agreement" section); *id.* at 56-57 ("Total Transactions" section); *id.* at 59-60 ("Directors and Executive Officers" section, as it relates to any shares beneficially owned by Souki and any agreements related thereto).

**<u>Topic No. 16:</u>**

Defendant's pledges of Tellurian common stock as part of collateral packages to secure loans, including any pledges made personally or on his behalf by the 2016 Souki Family Trust. This topic also includes any forced sales of Tellurian common stock related to those collateral packages, including the forced liquidation of over 21 million shares of Tellurian stock in March 2020.